IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Barry Childers, | ) | Civil Action No. 7:05-1483-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| Eaton Corporation Long Term | ) | |
| Disability Plan, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court pursuant to the parties' Joint Stipulation wherein it was agreed that the Court may dispose of this matter upon the Joint Stipulation, the administrative record, the plan documents, and each party's memorandum in support of judgment.[1]  The complaint in this action was originally filed in this court on May 22, 2005, alleging a single cause of action for the recovery of long-term disability benefits ("LTD") pursuant to 29 U.S.C. § 1132(a)(1)(B). Defendant timely answered the Complaint, denying the material allegations therein and raising several affirmative defenses. The defendant Eaton Corporation Long Term Disability Plan is governed by ERISA.[2]

---

[1] The Fourth Circuit has recognized that there is no prohibition against the parties agreeing to do away with the summary judgment standard and simply allowing the court to dispose of a matter on its merits by way of stipulation.  *See Bynum v. CIGNA HealthCare of North Carolina, Inc.*, 287 F.3d 305 (4th Cir. 2002), footnote 14, where the court stated: "While the parties' agreement to waive the summary judgment standards and submit their case to the district court on its merits seem to be unique, the ERISA statute does not preclude such an agreement.  *See also, Tester v. Reliance Standard Ins. Co.*, 228 F.3d 372, 374, 377 (4th Cir. 2000) (affirming decision of district court after bench trial to award benefits to insured under ERISA plan because plan's term was vague and ambiguous)."

[2] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

**Factual and Procedural History**

Eaton Corporation established and serves as Plan Administrator[3] of the defendant Eaton Corporation Long Term Disabililty Plan, which provides employees with certain benefits in the event of long-term disability as defined under the terms of the plan. It utilizes a third party Claims Administrator known as Broadspire Services, Inc. Under the plan, all claims are filed with the Claims Administrator, which handles the claim through the first level appeal. The final appeal from the denial of benefits is to the Plan Administrator. (Admin. Record, pp. 20, 26). The Plan provides that the Plan Administrator and the Claims Administrator have discretionary authority to interpret the plan and to determine eligibility for benefits. (Admin. Record, p. 28). The Plan Administrator and the Claims Administrator denied Plaintiff's claim for benefits on the basis that he failed to demonstrate that he was laboring under a disability as defined by the written terms of the plan.

Until June 1997, plaintiff Barry Childers ("Plaintiff" or "Childers") was actively employed as a shobber shaper, also referred to in the record as a machinist, with Eaton Corporation and he participated in the Eaton Corporation Long-Term Disability Plan. Childers originally ceased working due to health problems in June of 1997. Childers filed a claim for short-term disability benefits, and defendant approved the claim. (Admin. Rec. 00065.) He applied for Long Term Disability ("LTD") benefits under the first tier definition of the Plan based on inability to perform the functions of his job and those benefits were approved effective March 1, 1998. (Admin. Rec. 00065.) Childers was thereafter approved for LTD benefits under the Plan's second tier definition of "covered disability" based on inability to perform the functions of any occupation.[4] The

---

[3] "The 'Plan Administrator' for the Plan is the Company, acting through the Claims Appeal Committee (Welfare Benefit Plans). The Claims Appeal Committee (Welfare Benefit Plans) is made up of employees of the Company appointed by the Vice President of Human Resources and acting within the scope of their respective employment." (Summary Plan Description, Admin. Record, p. 19).

[4] Plaintiff was awarded Social Security disability benefits effective January, 1999. (Admin. Rec. 482)

2

company periodically requested medical updates regarding Childers' condition, and in connection with one of these reviews it determined that his benefits should be terminated based on his medical improvement. The benefits were terminated effective September 1, 2004. (Admin. Rec. 00065.)

The Plan's representative, Broadspire, initially denied his claim on August 18, 2004 and Plaintiff appealed. The claim was again denied on March 15, 2005, after Broadspire obtained peer reviews. Childers again appealed and his claim was finally denied on September 22, 2005 in a sixteen-page letter, stating in pertinent part:

> Mr. Childers' medical records do not support a finding of disability. Mr. Childers appears to suffer from bi-polar disorder, depression, anxiety, chronic back pain, migraine headaches and dermatologic issues. There are no objective findings in the records regarding his back pain or his migraines. While there are some references to negative tests, no tests are submitted. All information regarding back pain and headaches are based exclusively on Mr. Childers' subjective complaints. . . The Disability Plan requires objective findings, and none have been submitted to support a disability based on headaches or back pain. . .
> With respect to Mr. Childers' bi-polar disorder, depression and anxiety, the record is devoid of objective findings and contains only information regarding Mr. Childers' subjective complaints. During the time period at issue, Mr. Childers has married and has been able to care for various family members. . . Each other medical reviewer of Mr. Childers' information concluded that the objective information did not support a finding that Mr. Childers was unable to perform any occupation.

Childers has now exhausted all levels of administrative appeal and initiated this lawsuit.

**Medical Evidence**

*A. Treating Physicians*

*Joseph Talley, M.D.* Progress note dated December 10, 2001 indicates: "Pt. in for FU and continues to do as well as I have ever seen him do. Meds. remain the same, headaches are

3

suppressed, and he appears fully functional in all fashions." (Admin. Rec. 443). The record does not reveal that the plaintiff consulted Dr. Talley after 2001.

***Richard V. Crowley, M.D.***  On August 28, 2003, Plaintiff's general practice doctor completed an Attending Physician's Statement listing his primary diagnosis as anxiety, depression, back pain, and chronic headache.  In an Estimated Physical Abilities form, he indicates that the plaintiff can work part-time.  He states that plaintiff can sit continuously for one-half hour; stand for 3/4 hour; and walk for ½ hour. With thirty minute rest periods, he can sit for one hour; stand for 4 hours; and walk for 2 hours. In his affidavit submitted to the plan, he states: "It is my opinion, based upon my specific knowledge of Mr. Childers' problems and treatment history that he is and has been completely and totally disabled from performing any job on a full-time basis." (Affidavit dated December 20, 2004, ¶ 6, Admin. Record, p. 273).

***R.D. Cox, III, M.D. (Psychiatrist)*[5]**   Dr. Cox indicates in his treatment notes from 2002 through 2004 that the plaintiff is doing well, but he continues to diagnose Childers with bipolar disorder. He notes that the patient is taking Celexa, Depakote, and Trazodone. He states in his affidavit: "It is my opinion, based upon my medical education and experience and based upon my specific knowledge of Mr. Childers' problems and treatment history that he is and has been completely and totally disabled from performing any job on a full-time basis, consistent with the definition of disability above." (Affidavit dated December 6, 2004, ¶ 8 Admin. Rec. p. 277-278).

### B. In House Psychiatrist

***Barry Glassman, M.D.***  After reviewing Plaintiff's records, Dr. Glassman concludes in a report dated January 14, 2004 that the records "fail to provide in objective mental status terminology

---

[5] Psychiatrist, J. Christopher Caston, indicated that the plaintiff left the practice as of February, 2000, so he could not complete the requested forms. Martha Skelton Patrick, his counselor, changed positions and indicated in 2003 that she would not be serving as Plaintiff's therapist after that date.

an intensity and severity of psychiatric symptomatology that would preclude this man from performing the core elements of any occupation.  In addition, they do not provide a description of a severity of illness that would require work limitations."

### C. Peer Reviews

***Vaughn Cohan, M.D. (Neurologist)*** The Plan requested a peer review by Dr. Cohan and indicated to him a diagnosis of bipolar disorder, opiate dependence, headaches, back pain, and eczema.  Dr. Cohan was requested to answer the following questions:

1. Based on the documentation and peer to peer. . . does the information support a functional impairment from any occupation as of September 1, 2004?
3. What type of additional clinical documentation would be helpful for the evaluation of this claim?
4. Do the medications the claimant is taking impact his/her ability to work?
5. Do the claimant's subjective complaints preclude his/her ability to work?

After reviewing the records, Dr. Cohan determined that "there are no reports of radicular pain, and there is no description of focal muscle weakness, dermatormal sensory loss, gait impairment or sphincter dysfunction.  No reports suggest significant decrease in lumbar range of motion or the presence of significant paravertebral muscle spasm.  There is no electromyogram or nerve conduction study submitted for review, and there is not lumbar MRI examination submitted. . . . There is no objective evidence that the claimant has significant disc diseases or radidulopathy. . . None of the descriptions suggest a degree of headache severity or intensity as to preclude work, and there is no objective documentation of any impairment in cognitive function."

***Charles Norris, Jr., M.D. (Psychiatrist)*** Dr. Norris opined that "although this claimant has a chronic problem with anxiety, depression and pain, and takes multiple medications, there has been no objective information provided to support his inability to work in any occupation at this time."[6]

---

[6] A peer review of a dermatologist was also obtained.

    *D. Independent Medical Exam*     The Plan obtained an Independent Medical Exam from Louis C. Gadol, a psychologist. (Admin. Rec. 199). His report dated February, 2004 indicates that he interviewed Childers and administered the Mini Mental Status Exam and the Wechsler Adult Intelligence Test. On the Mini Mental Status Exam, Childers scored 29 out of a possible 30 points. On the Wechsler test, Dr. Gadol observed that there was an unusual pattern of responses on two of the subtests, and he surmised that Childers may have known some of the answers that he missed. He summarized his findings as follows:

> I did not find any evidence of emotional dyscontrol, cognitive impairment or impairment in reality testing. There may be some physical impairments, but there was nothing that I could discern myself. . . I observed no problems with impulse control and no unusual psychomotor activity, other than what may have been feigned anxiety symptoms such as rubbing his face and blinking his eyes. . . My diagnostic impression based only on the data that I collected myself and what I observed is as follows:
>     Axis I: 309.28 Adjustment Disorder with Mixed Anxiety and Depressed Mood.
>     Axis II: 301.6 Dependent Personality Disorder.
>     Axis III: Reported Migraine Headaches.
>     Axis IV: Unemployed.
>     Axis V: Current GAF 66, estimated GAF prior to work leave 82.
> I believe that Mr. Childers is capable of working at a paying job, but perhaps one that is less exacting than his previous job at Eaton Corp. He has the cognitive abilities and the social skills to be successful. It might be helpful if he and his psychotherapist worked together toward work-readiness. They may need to address the issues of dependency and self-confidence.

    The independent licensed psychologist also performed a Behavioral Health Functional Capacity Evaluation ("FCE") of the plaintiff. He evaluated Plaintiff's emotional functioning, reality testing, cognitive functioning and behavioral functioning. In every area of testing, the psychologist noted that upon examination the plaintiff failed to demonstrate significant impairment. (Admin. Rec. 208-11). The Plan also obtained a review by the Medical Review Institute of America. (Admin. Record 607). The anonymous reviewer was apparently a psychiatrist. The reviewer

6

indicated that "there is a lack of medical evidence to support his claims of physical or psychological impairment that would support his claims of total disability."

*Employability Assessment Report*   The Plan obtained an employability assessment report, which concluded that Childers could work at various sedentary or light to medium jobs such as life insurance agent (as to which Childers has previous experience), information account clerk, hospital insurance representative, automobile salesman, and airline ticket clerk.  The Labor Market Survey also concluded that jobs were available which Childers could perform.

*Affidavit of Plaintiff*.   Plaintiff submitted an affidavit (Admin. Rec. 260) in which he indicates that he lacks concentration, coordination, and energy.  He also states that he suffers from fatigue and pain and that he does not believe that he is able to work because of those conditions as well as his migraine headaches.

*The Plan*

The relevant portions of the Plan are as follows:

"**PLAN INTERPRETATION**
Benefits under the Eaton Long Term Disability Plan will be paid if the Plan Administrator and/or Claims Administrator decides that the applicant is entitled to them under the terms of the Plan. The Plan Administrator and/or Claims Administrator has discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan, including but not limited to, any disputed or doubtful terms. The Plan Administrator and/or Claims Administrator also has the power and discretion to determine all questions arising in connection with the administration, interpretation and application of the Plan. Any and all determinations by the Plan Administrator and/or Claims Administrator will be conclusive and binding on all persons, except to the extent reviewable by a court with jurisdiction under ERISA after giving effect to the time limits described in the "Claims Appeal Procedure" section of this booklet."

"**ELIGIBILITY FOR BENEFITS**
You may be eligible for monthly long term disability benefits if you are covered by the Plan and:
•       You cannot work due to an illness or injury, whether occupational or non-occupational;
•       You have a covered disability as defined under "Covered Disability;" and
•       You are under the continuous care of a physician who verifies, to the satisfaction of the Claims Administrator, that you are totally disabled.

- • • If you cannot work due to mental illness or alcohol or chemical dependency, the physician who provides continuous care and verifies, to the satisfaction of the Claims Administrator, that you are totally disabled must be a psychiatrist."

The LTD Plan defines "covered disability" as follows: "You are considered to have a covered disability (see, "Disabilities NOT Covered" for exceptions) under the Plan if:

● During the first 24 months of such disability, inclusive of any period of short term disability, you are totally and continuously unable to perform the essential duties of your regular position with the Company, or the duties of any suitable alternative position with the Company; and
● During the continuation of such total disability following the first 24 months, you are **totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well-fitted by reason of education, training or experience - at Eaton Corporation or elsewhere.** (Emphasis added)
(Admin. Rec. 00013.)

The LTD Plan also provides:

> Objective findings of a disability are necessary to substantiate the period of time your physician indicates you are disabled. Objective findings are those that can be observed by your physician through objective means, not just from your description of the symptoms.

Objective findings include:

> Physical examination findings (functional impairments/ capacity);
> Diagnostic tests results/imaging studies;
> Diagnosis;
> X-ray results;
> Observation of anatomical, physiological or psychological abnormalities; and
> Medications and/or treatment plan.

(Admin. Rec. 00018.)

### Discussion of the Law

**Standard of Review**

Plaintiff concedes[7] and this Court finds that the Eaton Long Term Disability Plan confers discretion on the Claims and Plan Administrators and therefore, this Court is to review the denial of

---

[7] *See* Plaintiff's Memorandum in Support of Judgment [Docket Entry #22], page 20.

benefits decision under an abuse of discretion standard. *See Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518 (4th Cir. 2000); *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 341 (4th Cir. 2000).

Under the abuse of discretion standard, deference should be given to the Plan Administrator's decision. Thus, the decision should not be disturbed if the decision was reasonable, even if this Court were to disagree with the Plan's determination. *See Feder*, 228 F.3d at 522. A plan administrator's decision is considered reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997) (internal quotations omitted). "Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *LeFavre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 204 (4th Cir. 1984). *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Under the abuse of discretion standard, the reviewing court must generally determine whether a plan administrator's decision was reasonable based upon the evidence before it. *Booth*, 201 F.3d at 343.

In his Memorandum in Support of Judgment, Plaintiff states "ordinarily, Plaintiff would argue that a 'conflict of interest' exists because the plan is self-funded by its administrator. However, in the recent case of *Colucci v. Agfa Corporation Severance Pay Plan*, 431 F.3d 170 (4th Cir. 2005), the Fourth Circuit held that it will not recognize a *per se* conflict of interest as a factor that would serve to reduce the deference to be accorded a claim decision simply because a plan is self-funded by its administrator." [Docket Entry #22, p. 20].

In a Notice of Supplemental Authority filed on June 19, 2008, Plaintiff cites to the Court a recent decision issued by the United States Supreme Court, *Metropolitan Life Insurance Co. v. Glenn*, No. 06-923, 2008 WL 2444796, June 19, 2008, which Plaintiff asserts effectively overrules the Fourth Circuit's *Colucci* decision. In *Glenn*, the Supreme Court held:

9

> Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case.

*Glenn*, 2008 WL 2444796, at * 3.

Plaintiff accordingly requests the Court to find that a conflict of interest on the part of the plan administrator should be factored into the court's review of the denial of the claim. The Court agrees that the plan administrator in the case at bar was operating under a conflict of interest in that it both evaluates claims for benefits and pays the claims. Therefore, the Court will consider the conflict of interest as one of the factors in the "combination of factors method of review" approved by the Supreme Court in *Glenn*.8

**Plaintiff's Claim**

Childers contends that Defendant's claim decision was not based on substantial evidence or the result of a principled reasoning process because the Plan's reviewing physicians failed to consider all of his physical and mental problems together. He also contends that many of his complaints are necessarily subjective and, therefore, objective findings are not possible.

A participant's entitlement to an "award of benefits under an ERISA plan is governed in the first instance by the language of the plan itself." *S.S. Trade Ass'n Int'l Longshoreman's Ass'n v. Bowman*, 247 F.3d 181, 183 (4th Cir. 2001). In other words, the written language of an employee benefit plan determines an employee's entitlement to benefits and the amount of those benefits. *See*

---

[8] The Fourth Circuit has held that the presence of a conflict of interest results in a modified abuse of discretion standard and that "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it."*Ellis v. Metropolitan Life Ins.Co.*, 126 F.3d 228,233 (4th Cir. 1997). It appears to the Court that this standard has been modified by the "combination of factors method of review" set forth in *Glenn.*

10

*Dameron v. Sinai Hospital Baltimore, Inc.*, 815 F.2d 975, 978 (4th Cir. 1987). As fiduciary for the plan, Eaton is obligated to plan participants to follow the written terms and conditions of the plan in reviewing disability claims. *See* 29 U.S.C. § 1104(a)(1)(D); *Pegram v. Herdich*, 530 U.S. 211, 223-24 (2000). In determining disability, the Plan should look at the physical and mental condition of the claimant where appropriate based upon the language of the Plan. *See McKoy v. International Paper Co., Inc.*, 488 F.3d 221 (4th Cir. 2007).

Plaintiff cites *Donavan v. Eaton Corp. Long Term Disability Plan*, 462 F.3d 321 (4th Cir. 2006) in support of his argument that Eaton abused its discretion because it failed to consider all of his conditions together. In *Donovan*, the Fourth Circuit Court of Appeals affirmed the decision of the district court that the Plan's denial of long term disability benefits was unreasonable. However, the case was factually distinguishable from the instant case in that the plaintiff in *Donovan* underwent unsuccessful back surgery and also provided an electrodiagnostic report and radiology reports documenting her symptoms. Plaintiff also cites *Guthrie v. National Rural Electric Coop.*, 509 F.3d 644 (4th Cir. 2007) in support of his argument that the Plan did not consider her entire medical condition. *Guthrie* is also distinguishable from the case at bar in that the administrator of the Plan in *Guthrie* concentrated on her occupational asthma and ignored the plaintiff's other conditions.

In its final denial letter in the case at bar, Eaton states that Plaintiff "appears to suffer from bi-polar disorder, depression, anxiety, chronic back pain, migraine headaches and dermatologic issues." (Admin. Rec. 00070.) It is apparent that the Plan considered all of the plaintiff's physical and mental problems but determined that they did not prevent him from working.

With regard to the substantial evidence in the record generally to support the Plan's decision, the Court notes that Plaintiff's ability to engage in interpersonal relationships has changed. He has now married and helps care for his wife's adult Downs Syndrome child. (Admin. Rec. 00337.) Plaintiff's treating physicians' records further support the conclusion that his condition was progressively improving from 2000 to 2003. (Admin. Rec. 00318-68.) His medical records lack any recent objective clinical findings which show total disability supporting Plaintiff's claim for continued LTD benefits. (*Id*.) The notes of Plaintiff's psychiatrist, Dr. Cox, show a distinct pattern of improvement. Furthermore, Dr. Crowley, Plaintiff's general practice physician, states that as of August 28, 2003, Plaintiff could work a part-time job. (Admin. Rec. 00407.) (Emphasis added.) This diagnosis by his own physician establishes that Plaintiff can perform work for compensation, and that no impediments exist which would continuously preclude Plaintiff from the job duties of any occupation for compensation. Additionally, the general peer review supports the finding by the Plan that Plaintiff's condition has improved and that he is no longer qualified for LTD benefits. The independent Peer Reviewer found that "the submitted documents, both from the psychiatrist and from the clinical social worker, fail to provide in objective mental status terminology an intensity and severity of psychiatric symptomology that would preclude this man from performing the core elements of any occupation. In addition, they do not provide a description of a severity of illness that would require work limitations." (Admin. Rec. 00191.)

Plaintiff's ineligibility is confirmed by the IME and FCE's thorough examination of Plaintiff's capabilities. These evaluations concluded that Plaintiff was capable of engaging in an occupation for compensation or profit. An Employability Assessment Report and a Labor Market Survey then confirmed that such positions were available in Plaintiff's area. The record reflects that the plaintiff has an associate's degree in business and worked previously as a life insurance salesman.

The Administrative Record thus contains substantial evidence that Plaintiff was capable of engaging in an occupation or performing work for compensation or profit, for which he is reasonably well-fitted, and the Plan's decision is the result of a deliberate, principled process.9 "Where an ERISA administrator rejects a claim to benefits on the strength of substantial evidence, careful and coherent reasoning, faithful adherence to the letter of ERISA and the language in the plan, and a fair and searching process, there can be no abuse of discretion–even if another, and arguably a better, decisionmaker might have come to a different, and arguably a better, result." *Evans v. Eaton Corp.*, 514 F.3d 315, 325-326 (4th Cir. 2008).

## Conclusion

Based on the evidence before the plan administrator, the Court concludes that it had a reasonable basis for finding that the plaintiff was no longer disabled under the terms of the plan. The Court finds that Eaton did not abuse its discretion and, accordingly, is entitled to judgment in the case. It is therefore **ORDERED** that Defendant is granted judgment in its favor.

**IT IS SO ORDERED.**

                                        s/R. Bryan Harwell  
                                        R. Bryan Harwell  
                                        United States District Judge

Florence, South Carolina  
June 30, 2008

---

[9] This Court has not considered matters outside the administrative record. The plaintiff's motion to strike such matters was granted. *See* Order dated March 31, 2007, docket entry # 55.